# EXHIBIT A

# Master Services Agreement

## Applicable to

## Services

## Performed by

## *AQUENT, LLC*

## For

## AARP

## TABLE OF CONTENTS

**ARTICLE**                                                                                      **PAGE**

ARTICLE 1 - MULTIPLE CONTRACTS ............................................................................... 1
ARTICLE 2 – TERM / TERMINATION ................................................................................. 2
ARTICLE 3 – SERVICES AND PERFORMANCE ................................................................. 2
ARTICLE 4 - FEES AND PAYMENTS .................................................................................. 3
ARTICLE 5 - INDEMNITY / INSURANCE ............................................................................. 5
ARTICLE 6 - CONFIDENTIALITY AND SECURITY ............................................................. 6
ARTICLE 7 – FINANCIAL / PERFORMANCE AUDITS ........................................................ 8
ARTICLE 8 - INDEPENDENT CONTRACTOR ..................................................................... 8
ARTICLE 9 – CONFLICTS ..................................................................................................... 9
ARTICLE 10 - *FORCE MAJEURE* / FAILURE TO PERFORM ........................................... 9
ARTICLE 11 - NOTICES ........................................................................................................ 9
ARTICLE 12 – MISCELLANEOUS ...................................................................................... 10

## LIST OF MSA ATTACHMENTS

MSA ATTACHMENT NO. **[Fill In, If Applicable]**
MSA ATTACHMENT NO. **[Fill In, If Applicable]**

# MASTER SERVICES AGREEMENT
# FOR SERVICES

This Master Services Agreement For Services ("MSA") is made and entered into as of **August 26, 2013** by and between AARP, a not-for-profit corporation organized and existing under the laws of the District of Columbia and having its principal place of business at 601 E Street, NW, Washington, DC 20049 ("AARP") and Aquent, LLC, a limited liability company organized and existing under the laws of the State of Delawareand having its principal place of business at 711 Boylston Street, Boston, MA 02116 ("Contractor" or "Consultant") [cumulatively, "Parties"].

## WITNESSETH

WHEREAS, AARP desires to engage Contractor from time to time to perform certain services; and,

WHEREAS, the Parties acknowledge that this MSA is contemplated to be performed by Contractor in a series of performances, each of which will constitute a contractual relationship between the Parties pursuant to and otherwise in conformity with this MSA to the extent not otherwise inconsistent herewith, and the absence of which shall not otherwise invalidate this MSA; and,

WHEREAS, Contractor may agree to perform such services under the terms of this MSA and separately executed MSA Attachments, as defined herein;

NOW, THEREFORE, the parties agree as follows:

**ARTICLE 1 - MULTIPLE CONTRACTS**

1.1. **General Terms.** The Parties acknowledge and agree that this Master Services Agreement is intended to operate as a standard set of terms and conditions pursuant to which Contractor may perform services under contracts to be executed by the Parties hereto ("MSA Attachments") , where each such MSA Attachment will be substantially in the form of Exhibit A hereto and will (a) describe with particularity the services to be rendered ("Services"), (b) include a specification of the (i) term, (ii) schedule, (iii) Services to be provided by Key Person(s) (as described in Article 3 of this MSA), (iv) fees, (v) expenses and (vi) costs applicable to provision of such Services, and (c) will incorporate this MSA by reference to the extent not otherwise inconsistent with this MSA, so that each MSA Attachment shall constitute a separate contractual agreement.

1.2. **No Obligation to Execute MSA Attachments.** The Parties acknowledge and agree that nothing in this MSA will obligate either Party to execute any MSA Attachments.

1.3. **Separate Contracts.** The Parties acknowledge and agree that each MSA Attachment will be deemed a separate contract.

1.4. **Conflict Between MSA And MSA Attachment.** The Parties acknowledge and agree that in the event of a conflict between an MSA Attachment referencing this MSA and this MSA, the MSA Attachment will prevail. When interpreting an MSA Attachment, references to this MSA will be deemed to be a reference to both this MSA and the MSA Attachment. The Parties further acknowledge that each MSA Attachment may only be amended in accordance with the terms and conditions under which this MSA may be amended.

1.5. **No MSA Attachment.** The Parties acknowledge and agree that where Services are provided without an MSA Attachment, the terms and conditions will be governed by the terms and conditions of this MSA.

1.6. **Not Superseded by Parole Evidence Rule.** Contractor agrees that any Article in any MSA Attachment with a provision equivalent to Article 12.7 hereof will not be deemed to exclude the effectiveness of this MSA unless it specifically mentions and negates the applicability of this MSA.

1.7. **Referencing MSA Attachments.** The Parties acknowledge and agree that, for ease of reference, each MSA Attachment will be numbered sequentially, *e.g.*, MSA Attachment No. 1, MSA Attachment No. 2, etc. Failure to do so, however, will not be opposable against either Party.

MASTER SERVICES AGREEMENT
FOR SERVICES

## ARTICLE 2 – TERM / TERMINATION

2.1. **Term and Termination.** This MSA will be effective as of **August 26, 2013** and will remain in effect until terminated by either Party upon notice to the other; provided, further, that this MSA shall remain in full force and effect until any then outstanding MSA Attachment is terminated in accordance with its provisions and the provisions of this MSA.  The term of each MSA Attachment will be as specified in the MSA Attachment.  AARP will have the right to terminate any MSA Attachment upon advance notice of thirty (30) days to Contractor.  In such event, AARP will be liable only for payment of that portion of the Services already performed.  Any termination under the terms of this Article will not limit any obligation or liability accrued by either Party arising hereunder prior to the termination.  Except for the fees for Services provided and, if any, non-cancelable accrued or incurred expenses and costs, AARP will not be liable for any damages or other liability as a result of the termination of this MSA or any MSA Attachment prior to the stated termination date.

2.2. **Performance During Disputes.** Should disputes of any nature arise during the term of this MSA, both Parties will proceed diligently with their performance pursuant to this MSA pending settlement or resolution of said dispute.  The Parties acknowledge that this provision will not operate to require payment by AARP of amounts that are the subject of the dispute.  The Parties further agree that this provision will not operate to limit any of the other rights and remedies provided for in this MSA.

## ARTICLE 3 – SERVICES AND PERFORMANCE

3.1. **Services.** Contractor will perform services and produce work product related to Digital, Marketing and Creative services in accordance with the terms and specifications of each MSA Attachment. Each MSA Attachment will describe as fully as possible the scope of the Services, and the timeframes in which Contractor will perform the Services.

3.2. **Performance Standard.**  Contractor warrants that the Services will be performed in a good and workmanlike manner, with the highest standards of integrity and professionalism.  The Services will be performed in accordance with Contractor's Code of Conduct and, as applicable, AARP's Code of Conduct, and with due regard for the nature and purposes of AARP as a highly visible not-for-profit association representing the diverse interests of persons over the age of fifty (50) years.  Contractor will perform the Services to the sole satisfaction of AARP and with the care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with the provision of such Services would use.  AARP will provide Contractor with direction, material, information, and access to its representatives as Contractor reasonably requests.  Contractor will advise AARP of any inaccuracies it becomes aware of in the course of using such information.  The Parties understand and agree that this is a non-exclusive agreement, and AARP reserves the right to perform the Services on its own or through any third party at any time including during the term of this MSA.

3.3. **Key Person.** If any individual employed by the Contractor is specified in Exhibit A as a "Key Person", that person will be deemed an essential person for the performance of the Services specified in this Agreement.  If only one person is designated as a Key Person, that individual will be deemed the primary project manager assigned to the project and will have primary responsibility with respect to all Services provided pursuant to the Agreement. If more than one person is designated in Exhibit A as a Key Person, the Exhibit A shall also designate one Key Person as the project manager.  Contractor will not change any Key Person without the prior consent and approval of AARP.  Upon request of AARP, Contractor will replace any Key Person deemed unable to devote sufficient time or expertise to maintain his or her level of responsibility with a replacement Key Person subject to the prior consent and approval of AARP.  If Contractor deems any Key Person unable to devote sufficient time to maintain his or her level of responsibility, Contractor will provide advance written notice of the person designated to replace him or her, which person will be subject the prior consent and approval of AARP.

3.4. **Work Product.** All products of Contractor's performance hereunder will be considered "work(s) made for hire" for AARP, shall belong exclusively to AARP and its designees, including the

**MASTER SERVICES AGREEMENT**
**FOR SERVICES**

intellectual property rights thereto, and will be surrendered during the course of this MSA, upon demand and at the termination hereof. To the extent that any element of the work products may not be considered a "work made for hire" under applicable law, Contractor hereby assigns, and upon creation of each element of each work product, automatically assigns exclusively to AARP, exclusive ownership of all intellectual property rights in each element of the work product. Contractor agrees to take such further actions and execute and deliver such further agreements and other instruments as AARP may reasonably request to give effect to this Section.

3.5. **Warranty of Qualification, Training, Licensing, Legal Compliance, Rule Compliance, Non-Infringement.** Contractor represents and warrants that: (a) all employees, agents and subcontractors utilized by Contractor pursuant to this MSA and any MSA Attachment (i) will be fully trained, equipped and competent, (ii) will perform their duties in a safe and courteous manner, will observe standards of discipline satisfactory to AARP, including observance of all applicable rules at all times while on the location where Contractor will perform the Services, and (iii) will work harmoniously with AARP personnel; (b) Contractor has obtained all permits and licenses required by all applicable authorities to perform the Services specified in this MSA and any MSA Attachment and will continue, at its own expense, to be so permitted and licensed throughout the term of this MSA and any MSA Attachment; (c) the Services and Work Product provided under this MSA and any MSA Attachment will not violate any contracts with any third party or infringe on any intellectual property or other rights of any third party, provided, however, that the foregoing warranty shall not apply to any infringement resulting from Contractor's use of tools, instructions, specifications, content, or other materials provided by AARP to Contractor, or where AARP or any third party modifies any aspect of the Services or Work Product upon written approval from AARP; and (d) all Services provided under this MSA and any MSA Attachment will conform to all applicable federal, state and other applicable statutes, regulations, ordinances, and orders ("Laws") , and that such Laws will be deemed to apply to Contractor if such Laws would apply to AARP.

3.6. **Non-Discrimination.** Contractor agrees that it will not discriminate or permit discrimination against any person or group of persons on the basis of age, disability, sex, race, color, religion, national origin, or any other protected classification, or in any other manner prohibited by law. Contractor shall comply with all applicable Laws pertaining to nondiscrimination in employment and facilities including, without limitation, the provisions contained in Executive Order 11246 as amended and as may be further amended in the future, titled "Equal Employment Opportunity" and 41 C.F.R. §§ 60-1.4(a), 60-250.4 and 60-741.5(a) which are incorporated herein by reference.

### ARTICLE 4 - FEES AND PAYMENTS

4.1 **Fees.** As specified in each MSA Attachment, AARP will pay Contractor an hourly rate for Services provided.

4.2 **Expenses.** Except as otherwise provided in an MSA Attachment, Contractor shall be responsible for all expenses incurred pursuant to this MSA. In the event that an MSA Attachment provides for reimbursement of certain expenses, Contractor shall submit all relevant receipts and vouchers along with its invoices, and shall provide AARP with access to all records necessary to verify such expenses upon request from AARP. In no event, however, shall AARP be responsible for unreasonable or excessive expenses, for ground transportation expenses to and from the homes of Contractor's employees, or for travel time.

4.3 **Payment.**

   4.3.1 Contractor will invoice AARP for the fees (and any permitted expenses or costs) described in each MSA Attachment on a monthly basis for the Services performed in the preceding month. The invoice must reference a separate purchase order number (PO#) for each MSA Attachment, and must also include full documentation of the work performed.

   4.3.2 Invoices for Contractor services rendered and covered expenses incurred must be sent to either: (i) AARP, General Accounting Services, Accounts Payable Section, P.O. Box 51040, Washington, D.C. 20091 or (ii) via email to one of the following:

## MASTER SERVICES AGREEMENT
## FOR SERVICES

apcorporate@aarp.org
apics@aarp.org
apmembership@aarp.org
apsigsog@aarp.org

**4.3.3** If AARP is reasonably satisfied with the Services provided by Contractor, AARP payment terms to Contractor are Net 45 days of receipt of Contractor's invoice.

**4.3.4** If AARP disputes all or any portion of an invoice, AARP may pay only the amounts not in dispute, and payment for the disputed amount will be paid after the resolution of such dispute. Contractor agrees that it will submit no invoices or revisions to invoices more than six (6) months after Services are delivered or rendered. In the event of termination by AARP of this MSA or any MSA Agreement, AARP will make payment to Contractor for accepted materials delivered, accepted work performed, and/or allowable expenses incurred up to the date of termination, computed in accordance with the terms of this MSA and any MSA Attachment, , as may be amended; and provided, further, that in any such event AARP shall not be obligated to make any further payments to Contractor for Services performed after the date of termination.

**4.4** **Taxes.** In addition to the amounts charged pursuant to this MSA, AARP will pay any applicable sales and/or use taxes that may be lawfully imposed by the government of the United States or any state or political subdivision thereof upon Contractor for the Services provided to AARP pursuant to this MSA provided Contractor promptly notifies AARP of the imposition of such taxes. Contractor agrees to be liable, and to indemnify AARP, for any penalties and interest imposed by any taxing authority against AARP arising from any late filing resulting from the failure of Contractor to timely notify AARP of any related tax obligation sufficiently in advance to enable AARP to make timely filing and payment in the ordinary course of business. Contractor agrees that the fees paid pursuant to this MSA will be deemed to include any value added tax or similar tax imposed by any government.

**4.5** **Equipment and Materials**. Except as otherwise specified in any MSA Attachment or as requested by AARP, Contractor will be responsible for the acquisition, maintenance, inventory, storage, and control of all equipment, materials and supplies required to perform the Services.

**4.6** **Prices.** Contractor agrees that the prices for the Services under this MSA or any MSA Attachment will be as specified in each MSA Attachment and warrants that such prices are no less favorable than those currently extended to any other customer in similar circumstances buying the same Goods and/or Services in similar quantities.

**4.7** **Non-Solicitation.** Each party agrees not to offer employment to, hire, engage the services of, nor to use, directly or indirectly, the employees or personnel of the other who are introduced as a result of Services provided under this Agreement without the written consent of the other party during the term of this Agreement and during the one (1) year period commencing upon the expiration or termination hereof, provided however, that AARP shall have the right to directly hire Contractor's personnel as employees of AARP without the prior written consent of Contractor pursuant to the terms and conditions set forth in Section 4.8 below. This provision does not apply to hiring which is a result of an employee of either party responding to a general solicitation through an employment agency, classified advertisement (whether in print media or web-based) or general solicitation advertisement.

**4.8** **Right To Hire**.

**4.8.1** AARP retains the right to hire any resources of Contractor after such resource has provided 1,040 hours of service to AARP, at no fee. AARP may hire or engage directly or indirectly any resource of Contractor who is introduced to AARP by Contractor during the term of any engagement and for one year after the expiration or termination therof pursuant to the terms of the schedule set forth below. Categories of resources for which these rules apply: Accounting/Finance (FN), Human Resources (HR), Information Technology (IT) and Business Professionals (BP).

**MASTER SERVICES AGREEMENT
FOR SERVICES**

| **HOURS ON ASSIGNMENT WITH AARP** | **CONVERSION FEE** |
|---|---|
| 0 to 519 hours | 30% |
| 520 to 1,040 hours | 15% |

**4.8.2**   AARP retains the right to hire any Administrative resources after 520 hours service at no fee. AARP may hire or engage directly or indirectly any resource of Contractor who is introduced to AARP by Contractor during the term of any engagement and for one year after the expiration or termination therof who has worked less than 520 hours at a conversion fee of 30%. The job category for which these rules apply is Administrative/Office(A/O). Contractor will know at receipt of requirement what category resource person will belong to and the policy associated.

**4.8.3**   Hours of service are accumulated from the start date at AARP pursuant to the applicable Contractor resource to the then-current date of the same assignment with AARP and will include all hours of service at AARP with the Contractor. This will allow for breaks in service (non-contiguous time), but the accumulation of time shall not include any time during which Services were not being provided by the Contractor resource in question, providing all Services are with Contractor.

**4.8.4**   The conversion fee shall be calculated as a percentage of the individual's initial anticipated annual base salary, payable on the date the individual begins employment. Any resumes or information provided to AARP regarding candidates presented for temporary services engagements are Contractor's confidential information and shall be afforded appropriate protection and safeguards.

### ARTICLE 5 - INDEMNITY / INSURANCE

**5.1.**   **General Indemnity.**  Contractor agrees and hereby undertakes to release, indemnify, and save harmless AARP, its subsidiaries and affiliates, and their respective officers, directors, employees, members, independent contractors, agents, and/or benefit plans, from and against all liability, damages, claims, suits, theft, penalties or actions of every name and description, and including any and all costs and expenses related thereto (including the costs of the defense thereof, reasonable attorney fees and court costs), directly arising out of or resulting from (a) the negligent acts or omissions of Contractor, its officers, directors, employees, members, independent contractors, agents or benefit plans in connection with the performance of any this MSA or any MSA Attachment, (b) Contractor's breach of this MSA or any MSA Attachment or the representations contained in either, including (i) failure to provide the Services and work product in accordance with the standards of care set forth in this MSA or any MSA Attachment, or (iii) a breach by Contractor of any of the terms hereof herein, and/or the performance of any labor or services performed hereunder; and (c) any claim that the Services or Work Product provided under this MSA or any MSA Attachment infringe or violate the intellectual property or other rights of third parties, except to the extent caused by the gross negligence or willful misconduct of AARP or such infringement results from Contractor's use of tools, instructions, specifications, content or other materials provided by AARP to Contractor, or where AARP or any third party under AARP's control or at AARP's direction modifies any aspect of the Services or Work Product.  Contractor acknowledges and agrees that the indemnity specified herein will include, without limitation, indemnification for settlements or compromises of matters covered by this indemnity.

**5.2.**   **Liability Insurance.**  At all times during the term of this MSA or any MSA Attachment, Contractor will carry and maintain in full force and effect Comprehensive General and Automobile Liability Insurance with a combined single limit of liability of not less than One Million dollars ($1,000,000) or, if greater, the maximum limit of Contractor's coverage at the time of the execution of this MSA. Contractor warrants that such insurance is primary without right of contribution from any other insurance that is carried by AARP.  Upon request, which may be made by AARP as a condition of beginning or continued performance under this MSA, Contractor will provide AARP within five (5) business days from receipt of request with Certificates of Insurance that (1) includes AARP as an additional insured,, (2) designates that such insurance is primary without right of contribution from

**MASTER SERVICES AGREEMENT**
**FOR SERVICES**

any other insurance that is carried by AARP, (3) contains a waiver of subrogation in favor of the additional insureds and (4) Contractor will give AARP written notice at least thirty (30) days in advance of any cancellation or reduction to the insurance. Failure by AARP to request said certificates will not operate or be deemed to operate as a waiver of the insurance and associated endorsements required under this provision, and Contractor will hold AARP harmless from any liability arising as a result of any such failure(s).

5.3. **Worker's Compensation Insurance**. At all times during the term of this MSA, Contractor will carry and maintain in full force and effect Workers Compensation insurance as required by applicable law covering all personnel engaged in the furnishing of Services under this MSA.

5.4. **Limitation of Liability** . NEITHER PARTY HERETO SHALL HAVE ANY LIABILITY OR RESPONSIBILITY FOR ANY INDIRECT, INCIDENTAL, EXEMPLARY, SPECIAL, OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM LOSS OF PROFITS OR DATA), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES' LIABILITY FOR DAMAGES SHALL NOT EXCEED THREE (3) TIMES THE AMOUNT OF FEES PAID BY AARP TO CONTRACTOR FOR THE APPLICABLE STAFFING ENGAGEMENT. THE FOREGOING LIMITATION ON LIABILITY SHALL NOT APPLY TO CONTRACTOR'S BREACH OF THE CONFIDENTIALITY PROVISIONS CONTAINED HEREIN OR TO OBLIGATIONS OF INDEMNIFICATION.

### ARTICLE 6 - CONFIDENTIALITY AND SECURITY

6.1. **Confidential Information Defined.** All non-public information, whether written, verbal or electronic, concerning the affairs and operations of AARP, its subsidiaries and affiliates, and their respective contractors and agents, including, without limitation, operational plans, financial data, employee data, contractual information, and information relating to AARP members (including but not limited to member names, addresses, phone numbers, e-mail addresses) ("Member Information:"), shall be considered "Confidential Information" pursuant to this MSA and any MSA Attachment. Confidential Information shall not include information that Contractor can demonstrate by reasonable evidence was (a) already known to Contractor at the time of disclosure, (b) in the public domain or available to the public, (c) made available to Contractor by third parties (other than AARP members), without any non-disclosure obligation to AARP, or (d) independently developed by Contractor.

6.2. **Use of Confidential Information; Non-Disclosure.** Contractor agrees that it shall use Confidential Information solely for the purpose of providing Services to AARP, and solely as expressly permitted pursuant to this MSA. Contractor may not disclose, transfer, sell, rent, copy, or allow third-party access to Confidential Information, or use Confidential Information for Contractor's own benefit or the benefit of third parties. AARP agrees that Contractor will be permitted to disclose relevant aspects of the work to its employees to the extent necessary to perform the Services and to the extent such employees are bound to maintain the security and confidentiality of the Confidential Information. Notwithstanding the foregoing, Contractor may disclose Confidential Information to the extent compelled by any court, regulatory order or other service of legal process, in which case, if legally permissible to do so, Contractor will provide AARP prompt prior notice of any such order or process sufficient to allow AARP to contest such order, and Contractor shall cooperate with AARP in responding to such order at AARP's sole expense. Contractor will protect and maintain the security and confidentiality of the Confidential Information using at least the same level of care (but no less than reasonable care) that Contractor uses to protect and maintain the security and confidentiality of its own confidential information.

6.3. **Security Controls.** To the extent that the Contractor is utilizing it own systems to store, process or transmit Confidential Information provisions 6.3 (a) and 6.3 (b) apply:

**6.3(a)** To the extent that Contractor has access to Member Information or other Confidential Information that AARP deems to be particularly sensitive, Contractor will maintain, at a minimum, the following controls: (a) updated anti-virus software installed on all appropriate computing equipment, (b) updated security software patches installed on all appropriate computing equipment, (c) firewall software installed on computing environments connected to the Internet, (d) use of encryption software when electronically transmitting AARP data to external organizations (including AARP), (e) appropriate access controls to restrict access to authorized

MASTER SERVICES AGREEMENT
FOR SERVICES

individuals of AARP data, materials, or computing systems or locations processing or storing AARP data, and (f) such other security controls, systems, and measures as AARP and Contractor may agree upon during the term of this MSA or any MSA Attachment.

**6.3 (b)** Contractor will maintain accurate and detailed records of its performance of its obligations as relates to preservation of technology security and confidentiality under this MSA and each MSA Attachment. AARP reserves the right to perform, either itself or through an authorized representative, performance audits relating to maintenance of technology security and preservation of confidentiality under this MSA. Audits may include examination of reasonably relevant information to support confirmation of preservation of technology security and confidentiality by Contractor, as well as review of Contractor's internal controls (such as business, security, and information technology practices) relevant to maintenance of technology security and preservation of confidentiality under this MSA or any MSA Attachment. Contractor will make all directly pertinent records available for inspection or audit by AARP or its authorized agent at Contractor's business office during normal business hours for up to six (6) months after the termination of each MSA Attachment. Without limitation to any other provisions of this MSA respecting engagement by Contractor of any subcontractors, vendors, advisors, or agents ("Third-Party Contractors") to perform any portion of the Services to which this MSA or any MSA Attachment relates, Contractor will require Third-Party Contractors so engaged to comply with the provisions of this Article.

6.4. **Third-Party Contractors.** Contractor shall not disclose any Confidential Information to any subcontractors, vendors, advisors, or agents ("Third-Party Contractors") without (a) the prior written consent of AARP, and (b) the execution by such Third-Party Contractor of an AARP-approved agreement imposing upon the Third-Party Contractor the same security and confidentiality obligations imposed upon Contractor pursuant to this MSA. Contractor shall be responsible for ensuring that all Third-Party Contractors comply with such obligations, and shall remain responsible for any unauthorized use or disclosure of Confidential Information by any such Third-Party Contractors.

6.5. **Notice of Incidents.** Contractor shall notify AARP as soon as practicable, but no later than forty-eight (48) hours, of any discovery of any unauthorized use, disclosure, theft, or other loss or compromise of Confidential Information. Contractor agrees to make available sufficient resources and data for AARP to determine the full impact and root cause of the incident.

6.6. **Return of Confidential Information.** Upon termination of this MSA, or at any other time during the term of this MSA or any MSA Attachment if requested by AARP, Contractor shall return to AARP, within ten (10) days, any and all Confidential Information, including Member Information (and any and all copies, tapes and duplications thereof), then in its or its Third-Party Contractors' possession, and shall maintain no such information in its or its subcontractors' possession.

6.7. **Regulatory Requirements.** To the extent that Contractor has access to any Confidential Information subject to the terms of any privacy laws or regulations, including but not limited to the Gramm-Leach-Bliley Act and the Health Insurance Portability and Accountability Act, Contractor agrees to amend this MSA or execute additional agreements (either with AARP, its subsidiaries or affiliates, or AARP member benefit providers) as directed by AARP.

6.8. **Remedies for Confidentiality Breach.** Contractor agrees that its breach of this Article will cause irreparable damage to AARP, and its subsidiaries and affiliates. In the event of any breach or imminent breach of this Article, Contractor agrees that, in addition to other remedies (which in the case of disclosure of Member Information may include, but not be limited to, lost rental value), AARP shall be authorized and entitled to seek preliminary or permanent injunctive relief from any court of competent jurisdiction (without being required to post bond or other security) to prevent, restrain, compel an act, or limit the effects of, as applicable or appropriate, such breach or imminent breach.

6.9. **Waiver of Confidentiality.** Notwithstanding anything to the contrary herein, nor implying any duty of confidentiality otherwise, Contractor acknowledges and agrees that any information shared or

**MASTER SERVICES AGREEMENT
FOR SERVICES**

given to AARP pursuant to this MSA on a confidential basis may be shared by AARP on a confidential basis with its subsidiaries and affiliates.

### ARTICLE 7 – FINANCIAL / PERFORMANCE AUDITS

7.1. Without limitation to the provisions in Article 6.6 of this MSA respecting Technology / Confidentiality Audits, Contractor will maintain accurate and detailed records of Contractor's performance of Contractor's obligations under this MSA and each MSA Attachment. For the duration of a project described in an MSA Attachment and a period of six months thereafter, and subject to the provisions of this Article 7, AARP will have the right to review, either itself or through an authorized representative, information reasonably relevant to the charges paid for Contractor's Services related to that MSA Attachment.

7.2. Audits may include examination of financially relevant information to support billing and contract costs. Contractor will make all records available for inspection or audit by AARP or its authorized agent at Contractor's business office during normal business hours.

7.3. If AARP exercises this right, Contractor will make available such records as: (a) Contractor's financial systems can generate directly, and (b) are necessary to support the amounts charged to AARP. If any audit reveals a material inadequacy or deficiency in Contractor's performance or billing, the cost of such audit shall be borne by Contractor. Otherwise, AARP agrees to compensate Contractor for time expended by Contractor's staff to facilitate the review and to reimburse Contractor for any expenses incurred in connection with the review.

7.4. AARP may exercise this right for an audit under this Article 7 only once in any calendar year and AARP agrees to limit the duration of the review to a reasonable period. The review must be conducted at mutually convenient times and locations and in a manner that does not disrupt Contractor's business operations. Except as maybe otherwise required by law, AARP agrees to keep information disclosed to AARP in the course of the review confidential from all third parties, except for any third party participating in the review with Contractor's consent as described below.

7.5. Contractor understands that AARP may wish to engage a third party to assist AARP in conducting the review. No third party may participate in the review unless AARP obtains Contractor's prior consent, which will not be unreasonably withheld, and the third party enters into an appropriate confidentiality agreement with Contractor. AARP understands that Contractor will not consent to the participation of any third party offering services or products that compete with Contractor's own, unless the only professionally qualified source of expertise required for such review is a competitor.

7.6. At AARP's request, Contractor shall provide AARP with copies of all documents, data, or information in Contractor's possession or control that pertain to Contractor's performance of Services. Contractor shall provide such documents, data, or information on such media as AARP might reasonably request, including hard copy, optical or magnetic disk, or tape.

7.7. Without limitation to any other provisions of this MSA respecting engagement by Contractor of any subcontractors, vendors, advisors, or agents ("Third-Party Contractors") to perform any portion of the Services to which any MSA Attachment relates, Contractor will require Third-Party Contractors so engaged to comply with the provisions of this Article.

### ARTICLE 8 - INDEPENDENT CONTRACTOR

**Contractor's Employees, Agents, Representatives Or Subcontractors.** Contractor is an independent contractor for all purposes regarding this MSA or any MSA Attachment. The employees, agents, representatives or subcontractors of Contractor engaged in performing Services will be considered employees, agents, representatives or subcontractors of Contractor for all purposes and will under no circumstances be deemed to be employees, agents, representatives or subcontractors of AARP. Contractor agrees to assume full responsibility for any and all liability to its employees, agents, representatives or subcontractors on account of injury, disability, and death resulting from, or sustained by said employees, agents, representatives or subcontractors in the performance of the Services. Unless otherwise agreed in writing, Contractor will, at the request of AARP, immediately remove from service any

**MASTER SERVICES AGREEMENT**
**FOR SERVICES**

employee, agent, representative or subcontractor whose acts or omissions, in the opinion of AARP at its sole discretion, are unacceptable.

### ARTICLE 9 – CONFLICTS

Contractor warrants and agrees that, to the best of its knowledge during the negotiation and performance of this MSA or any MSA Attachment, neither Contractor nor any officer, director, agent, representative or employees of Contractor or any individual with a significant personal relationship thereto have participated in any activity which could be or appear to be a conflict of interest pursuant to either the Contractor's or, as applicable, AARP's Code of Conduct specifically: (i) no direct or indirect remuneration or personal benefit of any kind, other than as specified in Exhibit A, has been received from, promised, or implied to any officer, director, agent, representative or employees of Contractor or any individual with a significant personal relationship thereto, AARP, or any third party that may participate in or profit from the performance of the Services; and (ii) Contractor has not or will not engage any entity or individual to perform the Services that has a significant relationship with AARP or with Contractor or any officer, director, agent, representative or employees of AARP or Contractor without disclosure of such relationship and written consent thereof by AARP for performance of the Services;  A violation of this Article shall constitute a material breach of this MSA or any MSA Attachment.

### ARTICLE 10 - *FORCE MAJEURE* / FAILURE TO PERFORM

**10.1. Consultation / Advice Of Delay.**  Contractor agrees to consult with and advise AARP of any anticipated delay or failure, as soon as it becomes aware of such anticipated delay or failure or the possibility thereof, whether for *force majeure* or not, and, where applicable, the re-establishment of applicable timetables.

**10.2.** *Force Majeure* - Notwithstanding any other provision of this MSA, it is agreed that either Party hereto will be relieved of its obligations hereunder in the event and to the extent that performance hereof is delayed or prevented by any cause beyond its control and not caused by the Party claiming relief hereunder ("*force majeure*").  Contractor agrees that where relief is obtained under this provision to make its best efforts to resume Service and, where applicable, to meet the timetable for the Services specified in an MSA Attachment.

**10.3. Failure To Perform.**  Notwithstanding any other provision of this MSA, in the event that Contractor fails to provide the Services contracted pursuant to this MSA or any MSA Attachment for any reason, including *force majeure*, and such failure continues for more than five (5) business days, AARP may, at its sole option, terminate the MSA Attachment(s) under which Contractor has failed to perform, and acquire similar Services from another provider or provide Services for itself.

### ARTICLE 11 - NOTICES

**11.1. Notice** - Except where specified elsewhere in this MSA, any and all notices, documents, records, correspondence, approvals or demands required or permitted to be given by the parties hereto will be sufficient if made in writing and sent by certified mail, postage prepaid, overnight courier, or delivered by hand.  Where sent by mail, such notices will also be sent by facsimile.  Notices to AARP will be addressed to:

Aquent, LLC_AARP_MSA

## MASTER SERVICES AGREEMENT
## FOR SERVICES

| Notice to AARP: | Notice to Contractor: |
|---|---|
| AARP<br>Attn: **Stephen Clifford**<br>**Associate General Counsel**<br>601 E Street, NW<br>Washington, DC  20049<br>Fax: (202) 434-**2339** | **Aquent, LLC**<br>**Attn:  Contracts Department**<br>**711 Boylston St.**<br>**Boston, MA 02116**<br>Fax: -**617-830-6502** |
| Email: **sclifford@aarp.org** | Email:  **contracts@aquent.com** |
| With copy To:<br><br>Vice President<br>Procurement & Contract Management Dept.<br>601 E Street, NW<br>Washington, DC 20049<br>Fax: 202-434-3179<br>Email: POAgreements@aarp.org | With Copy To:<br><br>N/A |

or to such other addresses in the United States as either party hereto may specify for itself by notice to the other as provided herein.  Notices will be deemed served as of actual receipt.

**ARTICLE 12 – MISCELLANEOUS**

12.1. **Choice of Law.  The parties hereto agree that this MSA will be governed by the Laws and Common Law of the United States and the District of Columbia as though the entire contract were performed in the District of Columbia and without regard to District of Columbia conflict of laws statutes/rules.**

12.2. **Use of AARP Name**.  Contractor will not use the name, trademarks, or service marks of AARP, its subsidiaries, or affiliates, for any purpose without the prior written consent of AARP, which consent may be withheld by AARP in its sole discretion.

12.3. **Assignment**.   The parties hereto agree and covenant that, except as provided in this MSA, this MSA and the rights and obligations established hereunder, may not be assigned in whole or in part without the prior written consent of the other, where such consent will not be unreasonably withheld, except that AARP may assign its rights to any wholly owned subsidiaries of itself or any successor.  Unless otherwise expressly agreed by the Parties, any such assignment pursuant to the foregoing shall not relieve the assigning Party of any of its obligations pursuant to this MSA.

12.4. **Headings.**   The captions and headings constructed in this MSA have been inserted solely for convenience and are not to be considered in matters of its interpretation.

12.5. **Severability.**  If any portion of this MSA will be declared illegal, void or otherwise unenforceable, the remaining provisions will not be affected, but will remain in full force and effect.

12.6. **Waiver**.  No waiver of any breach of any portion of this MSA will constitute a waiver of any subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing.

12.7. **Whole Agreement**.  This MSA and each MSA Attachment, including the Exhibits incorporated herein or therein by reference, represent the entire agreement between the parties hereto and supersedes any prior agreement or proposed variation from their terms contained herein.  In the event of any conflict between any terms and/or conditions contained on any forms or documents exchanged by the parties of this MSA, the terms and conditions of this MSA will govern.  This MSA will be modified, altered or amended, only by mutual agreement evidenced by an instrument in writing executed by both parties or their respective successors in interest.

Aquent, LLC_AARP_MSA

## MASTER SERVICES AGREEMENT
## FOR SERVICES

12.8. **Survival** - The representations, warranties, indemnities, limitation of liability, confidentiality (Article 5), and work product provisions contained herein will survive the termination or expiration of this MSA or any MSA Attachment.

12.9. **Counterparts** - This MSA may be executed in two (2) or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

12.10. **Good Standing.** The undersigned warrant and represent that each Party, if a legal entity, is duly organized and in good standing in the jurisdiction in which it is organized, and is otherwise under no legal impediment or limitation that would render it to be without legal authority to enter this MSA.

12.11. **Signature Authority.** Each of the signatories to this MSA warrant and represent that they have full legally authority to execute this MSA and, if executed on behalf of a legal entity, that they are duly authorized to bind the entity on behalf of which they have executed this MSA.

IN WITNESS WHEREOF, the parties have caused this agreement to be executed by their duly authorized representatives effective as of the date first specified above.

For **AARP:**                                      For   **Aquent, LLC**

By: _____                          By: _____

**Nameet Rai**                                     Name: **Pauline Tomko**

Title:  **Director, Procurement IT & Print**       Title: **Vice President, Professional Services**

Date:   8/28/13                                    Date: **August 26th, 2013**

## EXHIBIT A

## MSA ATTACHMENT NO. ___

This MSA Attachment, when executed by both parties will be an MSA Attachment to the Master Services Agreement For Services ("MSA") effective as of **[Insert Effective Date Of MSA]** between AARP and **Aquent, LLC** ("Contractor") ,as defined therein, and is agreed to by the parties thereto as of **[Insert date this MSA Attachment is effective]**. Except as specified herein the terms and condition of this MSA Attachment will be as specified in the MSA.

### 1.0 SPECIFICATION OF SERVICES

**[Insert here a description of the Services that the Contractor will perform. NOTE: Think in terms of actions [e.g., "conduct a telephone survey", etc., rather than results (which go in the deliverables section) [e.g., "provide a plan detailing an appropriate lobbying program"]**

### 2.0 TERM / SCHEDULE

**[Insert time schedule for different phases of project, including start up and conclusion dates.]**

### 3.0 DELIVERABLES

**[Insert results (final product) to be delivered [e.g., "provide a plan detailing an appropriate lobbying program"]**

### 4.0 LOCATION

**[Insert here a description of where the Work is to be performed. Examples:**

Unless approved in advance, all focus groups and design sessions will take place in the greater Washington, DC metropolitan area.

Or

AARP
601 E Street, NW
Washington, DC 20049

Or

N/A]

### 5.0 KEY PERSON

The following individual(s) is / are designated as a Key Person of Contractor under this MSA or any MSA Attachment:

**[Insert Name]**
**Insert Title]**
**[Insert Contractor Name]**
**[Insert Mailing Street Address]**
**[Insert Mailing City, State & Zip Code]**
Phone:   **[Insert Telephone Number]**
Fax:       **[Insert Fax Number]**
Email:    **[Insert Email Address]**

### 6.0 AARP Primary Contact

The primary contact at AARP relative to performance of this MSA or any MSA Attachment is:

**[Insert Name]**
**Insert Title]**
AARP
601 E Street, NW
Washington, DC 20049
Phone:   (202) 434-**[Insert Phone Extension]**
Fax:      (202) 434- **[Insert Fax Extension]**
Email:   **[Insert email name]**@aarp.org

### 7.0 FEES

AARP will pay Contractor for accepted Services for the actual hours worked by individuals performing the Services at the hourly rates set forth below:

| Service Provider | Hourly Rate |
|---|---|
| Provider 1 | $xxx |
| Provider 2 | $xxx |
| Provider 3 | $xxx |

a.  **Time and Materials Fees**

AARP will pay Contractor for accepted Services for the actual hours worked by individuals performing the Services at the hourly rate(s) of $_____ plus reasonable costs and expenses billed at actual cost with no markup.

Contractor personnel shall not work more than forty (40) hours per week unless requested by AARP. Upon such request, AARP agrees to pay Contractor 1.5 times the standard bill rate for all hours worked by Contractor personnel over forty-three (43) hours in one week.

### 8.0   EXPENSES

Contractor will not be entitled to reimbursement of Expenses with respect to this MSA Attachment.

**- or -**

Contractor shall be entitled to reimbursement of the following reasonable and necessary expenses approved in advance by AARP in accordance with the procedures set forth below:

**8.1   Reimbursement Procedures.** AARP will reimburse Contractor on the basis of documented receipts. Contractor shall submit all relevant receipts and vouchers along with its invoices, and shall provide AARP with access to all records necessary to verify such expenses upon request from AARP.

**8.2   Travel.** Expenses for travel to and from the site where Services are to be performed shall be by way of the lowest available airfare or train fare (whichever is most reasonably expedient). Travel time shall not be billable. In no event, however, shall AARP be responsible for unreasonable or excessive expenses, for ground transportation expenses to and from the homes of Contractor's employees, or for travel time.

**8.3   Lodging.** Notwithstanding the location of lodging selected, lodging expenses in the Washington, DC area shall be reimbursed at either (i) rates not to exceed rates applicable for AARP- employees staying at the hotels listed in Exhibit B, Attachment 1 to this MSA Attachment, and otherwise, within the guidelines set forth in Exhibit B, Attachment 2 to this MSA Attachment, or (ii) any special rates available to the Contractor, whichever is lower.

**8.4   Incidental Expenses.** Meals, per diem and Incidental expenses shall be reimbursed within the guidelines listed in Attachment 2 to this Exhibit B.

**9.0   COSTS.**

No costs in addition to the Fees for Services will be paid under this MSA Attachment.

- or -

In addition to the Fees for Services under this MSA Attachment, Contractor shall be entitled to reimbursement of the following reasonable and necessary costs approved in advance by AARP in accordance with the procedures set forth below:

**9.1   Reimbursement Procedures.** Without limitation to any other provisions of the MSA or this Exhibit A, AARP will reimburse Contractor for costs on the basis of documented receipts. Contractor shall submit all relevant receipts and vouchers along with its invoices, and shall provide AARP with access to all records necessary to verify such expenses upon request from AARP.

**9.2   Special Costs.** Contractor shall additionally be entitled to reimbursement of the following special costs:  None.  **[or delete 'None' and insert any special costs to be allowed]**

**10.0   PAYMENT TERMS**

Contractor will invoice AARP, and AARP will pay Contractor invoices according to the terms set forth in Article 4 of the MSA.

IN WITNESS WHEREOF, AARP and Contractor have caused this instrument to be executed by their duly authorized representatives on the day and year first above written.

For **AARP:**                                                                 For **Aquent, LLC**

By: _____*[signature]*_____                         By: _____

Printed: _____Namreet Rai_____                   Printed: **[Insert Signatory Name]**

Title: ___Director, Procurement___           Title:   **[Insert Signatory Title]**

Date: _____8/29/13_____                      Date:  _____