# EXHIBIT B

**MASTER SERVICES AGREEMENT ATTACHMENT**

This Attachment to the Staff Augmentation Services Agreement ("Agreement") between AARP (Client) and Aquent LLC dated 8/26/2013 is effective as of the last date signed below.

Whereas the Client wishes to engage Aquent to provide Employer of Record Services ("EOR") and; Whereas Aquent wishes to provide Employer of Record Services.

Aquent shall provide EOR Services subject to the terms and conditions below. In the event there is a conflict between the terms of the Agreement and this Addendum under an EOR engagement, the terms of this Addendum shall control with the intention this Addendum shall set out the terms for EOR Services.

1. **Services**
   Aquent shall hire personnel referred by Client ("Assigned Employee") and provide Employer of Record services ("Services") to client more particularly described below and subject to the following terms and conditions.

2. **Client Responsibilities**
   (a) Client shall use reasonable efforts and professional judgment to select qualified Assigned Employees that meet the qualifications of the position. Client shall not refer to Aquent any personnel who have received subpar performance evaluations by Client or its affiliates in the prior twenty-four (24) months. Upon request, Aquent reserves the right to exam performance evaluations and to reject employing any referred candidate from the Services for any valid legal reason.

   (b) Client shall provide the following information to Aquent: contact information, suggested pay rate or range, location, position title and job description, start date, and any other information Aquent may reasonably require providing the Services.

   (c) Client shall be responsible for notifying Aquent of any changes to the engagement including but not limited to termination, relocation of position, or pay-rate changes.

   (d) Client shall respond in a timely manner to any request from Aquent for records or information deemed necessary to perform its responsibilities and provide Services to the Assigned Employee or Client.

   (e) Client agrees that all notices, disciplinary processes and other employment-related matters must be affected through Aquent. Client shall notify Aquent sufficiently in advance of any engagement related changes such that Aquent may reasonably contact or notify the Assigned Employee, or other relevant parties respecting any notice periods required by law, agreement, or best practices.

   (f) Client shall not make any payments relating to the assignment directly to the Assigned Employee without the express written permission of Aquent. All payments relating to the Assigned Employee must go through Aquent.

   (g) Client shall indemnify and hold harmless Aquent against any and all claims, demands, damages, losses, expenses, or causes of action of every kind and character relating to, or arising from, any engagement undertaken directly or indirectly by the Assigned Employee prior to the beginning of the Assigned Employee's employment with Aquent. Should any such prior engagement exist, the Client shall reimburse Aquent in accordance with the payment terms of this Agreement any and all costs and fees incurred by Aquent relating to or arising from such prior engagement, along with Aquent's own fees; such costs and fees may include, without limitation, additional remuneration, accrued statutory leave, benefits, rights and obligations gained as a result of deemed employment, loss of earnings, whether perceived or actual, of the employee as well as any employer costs, contributions, taxes or similar relating to arising from the foregoing. For avoidance of doubt, an engagement shall mean an engagement in any form including but not limited to as an employee, or an independent contractor whether directly with the Client or via one or more third parties. For avoidance of doubt, Aquent shall have no liability

or responsibility for any claims, losses, or damages arising from Assigned Employee's engagements, its acts or omissions and Client's acts or omissions prior to employment by Aquent.

(h) Client shall inform Aquent of any performance issues and confirms that upon request they will carry out performance reviews on each Employee, on behalf of Aquent and provide the details to Aquent.

(i) Client agrees and confirms that should it be necessary to terminate an Assigned Employee, Client will provide no less than 5 business days' notice prior to any legally required notice periods set forth in the country where services are being performed, and before any action is taken or brought to the attention of the Assigned Employee. Client shall be responsible for any fines and penalties due to non-compliance with required notice periods. Client agrees that they will follow the guidance given to them by Aquent in respect of the termination and adhere to all associated regulation and applicable laws in the jurisdiction of the work or assignment.

(j) In the event Aquent ceases to be the EOR of an Assigned Employee for any reason, including but not limited to termination, layoff, or resignation, Aquent will bill PTO payout as a flat fee to AARP.

3. **Aquent Responsibilities**

(a) Aquent will EOR Salaried Consultants as well as Hourly Employees. Determination of Salaried or Hourly employment will be decided by AARP and business need for each individual employed with Aquent. Aquent will issue payment for approved time worked on a weekly basis to Hourly Employees. Salaried Consultant will receive a set annual salary which is not contingent on billable hours. Salaried Consultants with Aquent at AARP will be paid a weekly salary and will receive Premium Benefits based on tenure with AARP. Salaried Consultants do not qualify for overtime.

(b) Aquent shall provide the Assigned Employee with the *Premium Benefits Package* specific to Aquent resources at AARP. Policy will remain in accordance with Aquent's then current policies.

(c) Aquent shall be responsible for payment and/or withholding of, and for compliance with all applicable Federal and State law relating to, all wages, overtime, benefits, worker's compensation, disability benefits, unemployment insurance, and all income taxes and social security.

(d) Aquent shall ensure that the Assigned Employees will be eligible to perform work in the United States via a completed I-9 form verified by Aquent. Aquent represents and warrants that it uses e-Verify for new hires, and that it uses e-Verify in accordance with federal, state, and local laws.

(e) Aquent shall Comply with all provisions of the ACA applicable to any Assigned Employee including, without limitation, the employer shared responsibility provisions relating to the offer of "minimum essential coverage" to "full-time" employees (as those terms are defined in Code §4980H and related regulations) and the applicable employer information reporting provisions under Code §6055 and §6056 and related regulations.

(f) At Client's request, Aquent will perform background/qualification checks for all employees that Client selects. Client shall provide Aquent with its background check parameters and its pass/fail criteria. Aquent will perform criminal background checks in accordance with federal, state, and local laws, including the Fair Credit Reporting Act, the Americans with Disabilities Act, and similar state and local statutes and regulations. Aquent may ask Client for job position descriptions to use in Aquent's determinations regarding when and how background checks are performed, and Client shall provide such descriptions when so asked. Any costs for background checks or drug testing as requested by the Client shall be billed separately. Client shall pay Aquent for such costs within 30 days of the invoice date.

(g) The Parties acknowledge and agree that Aquent, in its sole discretion, shall have the final decision on whether to hire the candidate and or terminate the candidate.

Initials KHB   Date 2/7/23

2

(h) Employees day-to-day responsibilities and supervision shall be directed by Client and Client business needs. Client is responsible for directing and supervising the Assigned Employee and the work they perform, Aquent shall not be liable for any claims, costs, expenses, damages, obligations, or losses arising in connection with the acts or omissions of any Assigned Employee within the scope of Client's supervision of the Assigned Employee.

EXCEPT AS SET FORTH HEREIN, AQUENT DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED (EITHER IN FACT OR BY OPERATION OF LAW), OR STATUTORY, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

4. **Non-Payment by Client**
In the event that Client does not pay an invoice within forty-five (45) days of the due date, Aquent may terminate this Agreement. Client shall reimburse Aquent for all funds disbursed by Aquent, including but not limited to Assigned Employee's gross wages, payroll taxes and insurance costs.

5. **Safe Work Environment**
Aquent's workers' compensation carrier shall have the right to inspect the premises of any Client or affiliate of the Client upon reasonable notice and acceptance, during normal business hours and make recommendations pertaining to job safety. Aquent shall have the right, and upon reasonable prior notice to Client, to physically inspect the worksite and work processes, to review and address, unilaterally or in coordination with Client, Assigned Employee work performance issues and Assigned Employee conduct at the worksite. Aquent may terminate any relationship with Client or this Agreement, if, for any reason, Aquent determines it is an unsafe worksite.

6. **Independent Contractors**
Aquent and Client are independent contractors. Nothing in this Agreement shall be deemed to create any form of partnership, principal-agent relationship, employer-employee relationship, or joint venture between the parties.

7. **Aquent Fee**
(a) Fees shall be on Attachment A. Client agrees to pay one and a half (1.5) times the bill rate for overtime hours (as defined by applicable law) worked each week by nonexempt Hourly Employee plus any additional pay that may be required by the overtime provisions of applicable laws. Aquent will invoice Client monthly, and Client shall pay each invoice within 45 days of the date of the invoice. Aquent may adjust the Fees to cover increased burden costs, that will be quoted on a case-by-case basis.
(b) Billing for all EOR services are exempt and excepted from all rebates and discounts, if any, as may be provided for services other than EOR services.

8. **Term**
This Agreement shall be in effect until terminated in writing by either party. Either party may terminate this Agreement at any time with 30 days prior written notice. However, such termination shall not affect any amounts owed from the Client to Aquent.

9. **Compliance With Applicable Law.**
The parties agree to comply with all applicable federal, state, county and local laws in the United States and other applicable foreign jurisdictional laws in satisfying their obligations under this Agreement, including but not limited to, measures relating to working time and compensation of workers, workplace health and safety issues, mandates relating protected leaves, compensation for workplace injuries and/or illnesses and employment discrimination laws, as they apply in a specific jurisdiction. The Parties agree they will not unlawfully discriminate against any applicant or employees on the basis of sex, race, age, disability, religion, national origin or any other legally protected basis.

10. **Indemnification**
(a) Each party agrees to indemnify and hold the other, and its officers, directors, employees, and agents harmless from and against any and all losses (including costs and legal fees)

Initials  KHB   Date 2/7/23

3

which arise out of the indemnifying party's (i) failure to comply with the terms of this Agreement, (ii) its negligence, or (iii) a violation of applicable law, relating to obligations under this Agreement.

(b) Client shall defend, indemnify and hold harmless Aquent fully against any loss, injury, damage or costs suffered, sustained or incurred by: (i) an Assigned Employee in relation to any loss, injury, damage or costs arising out of any act or omission by the Client or its employees or agents; or (ii) a third party, in relation to any loss, injury, damage or costs arising out of any act or omission of an Assigned Employee in the course of carrying out the services to Client.

**11.  Limitation of Liability**

IN NO EVENT SHALL AQUENT HAVE ANY LIABILITY OR RESPONSIBILITY FOR ANY INDIRECT, INCIDENTAL, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM LOSS OF PROFITS OR DATA), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. AQUENT'S LIABILITY FOR DAMAGES HEREUNDER SHALL NOT EXCEED THE AMOUNT OF FEES PAID BY CLIENT TO AQUENT DURING THE PRIOR SIX MONTHS FROM WHEN THE CLAIM AROSE.

**12.  Entire Agreement**

This Agreement shall be governed under the Commonwealth of Massachusetts. This Agreement, and any exhibits attached to it contain the entire understanding between the parties and supersede all prior agreements and understandings relating to the subject matter of this Agreement. To the extent there is any conflict between the terms of the Agreement and Attachment A, this Agreement shall control.

Except as set forth in these Additions and Modifications the Agreement is not modified in any way. The parties hereto expressly acknowledge that the Agreement remains in full force and effect.

AQUENT LLC
By: _Pauline Tomko_
Name: _Pauline Tomko_
Title: _SVP/Vice President_
Date: _2/7/2023_

AARP
By: _Kimberly Hardy-Barnes_
Name: _Kimberly Hardy-Barnes_
Title: _SR Director Business - Financial_
Date: _2/7/23_

Initials _KHB_   Date _2/7/23_

4

## ATTACHMENT A
## Salaried Consultants

*Salaried Consultants-*
*Employer of Record*

*Non-Aquent Employees that are being transitioned to the Aquent Employer of Record Program will be at fixed weekly salaries based on 40 hours and AARP will be billed fixed monthly invoices based on 40 hours per week @42% mark-up.*

*All Aquent recruited employees transitioned to Salaried Consultants will have a 5% increase to their current bill rate.*

**All Salaried Consultants Paid Time Off**

   0-3 Years - 15 Days

   3-6 Years – 20 Days

   6+ Years – 25 Days

   Caregiving Leave. 2 Weeks at 100%

   Parental Leave. 6 Weeks at 100%

*Salaried Consultant Benefits*

*Statutory Benefits (Medicare, Social Security, FUTA, SUTA)*

Platinum Healthcare by CIGNA. Choice of 3 Options – HMO Style, PPO Style, Consumer Choice
Includes $50,000 Lifetime Maximum Coverage for Fertility Solutions through CIGNA

Platinum Dental by CIGNA. Choice of 2 Options – PPO and Premier

401(k) with Match. Salaried Consultant: 50% of the first 6%., Hourly: 10% of the first 10%.

Disability and Life Insurance. STD, LTD, Basic Life and AD&D

Sick Leave in all 50 States and Canada

12 Holidays to match AARP Holidays

Tenured PTO
   Salaried Consultant: 0-3 Years - 15 Days / 3-6 Years – 20 Days / 6+ Years – 25 Days
   Hourly: 3 M-1 Yrs 5 Days / 1-2 Yrs- 10 Days / 2-3 Yrs- 15 Days / 3-6 Years - 20 Days / 6+ Yrs - 25 Days
   Part-time resources accrue vacation leave on a prorated schedule.

Caregiving Leave. 2 Weeks at 100%

Parental Leave. 6 Weeks at 100%

Employee Assistance Program

$2,000 ELF Tuition Reimbursement and Team Readiness which includes Aquent's
Online Learning Platform Gymnasium Enterprise, Gymnasium, and Career Coaching

Employee Discount Program

Employee Paid (Voluntary) Benefits including FSAs, Supplemental Life for Self, Spouse and Child, Business Travel Accident, Identity Protection Plan, Supplemental Accident Insurance, Supplement Critical Illness Insurance, Supplemental Hospital Indemnity Insurance, Legal Insurance.

Other: Paid Family Leave, by State as Required by Law, Family Medical Leave, as required by Law, Military Leave, as required by Law

*Additional details provided in the 2023 AQUENT & AARP Talent Guide*

Initials _KHB_ Date _2/7/23_

5